IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NEW ORLEANS CITY PARK IMPROVEMENT ASSOCIATION, INC.** | |
| *Plaintiff* | CIVIL ACTION NO. |
| | SECTION: |
| **VERSUS** | |
| | MAGISTRATE: |
| **EMPLOYERS MUTUAL CASUALTY COMPANY** | |
| *Defendant* | |

# COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff **New Orleans City Park Improvement Association, Inc.**, ("City Park") who respectfully submits as follows:

## PARTIES

**1.**

Plaintiff New Orleans City Park Improvement Association, Inc. is non-profit corporation organized under the laws of the State of Louisiana, with its principal place of business in Louisiana.

**2.**

Defendant **Employers Mutual Casualty Company** ("Employers Mutual") is a limited liability company organized under the laws of the State of Iowa, with its principal place of business in the State of Iowa, and is licensed to do and doing business in the State of Louisiana.

1

## JURISDICTION AND VENUE

**3.**

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy is greater than $75,000, exclusive of interest and costs, as will be seen below.

**4.**

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(2), as a substantial part of the events or omissions giving rise to the claim occurred in, and a substantial part of the property that is the subject of the action is situated in, the city of New Orleans, which is located within the Eastern District of Louisiana.

## FACTS

**5.**

New Orleans City Park Improvement Association, Inc. is a Louisiana non-profit corporation that is charged by state statute with the supervision, preservation, and improvement of New Orleans City Park.

**6.**

To that end, and pursuant to the Louisiana Public Bid Law, La. R.S. 38:2211, *et seq.*, City Park advertised for bids for the renovation and improvement of the City Park Tennis Center on July 22nd, 29th, and August 5th, 2009. On September 1, 2009, City Park opened the sealed bids, and determined that Pete Vicari General Contractor, Inc. ("PVGC") was the lowest bidder, with a bid of $3,534,000. See Exhibit "A," Bid Tabulation Sheet, and Exhibit "B," Bid by Pete Vicari General Contractor, Inc.

**7.**

As is required by the Louisiana Public Bid Law, PVGC submitted with its bid a bid bond furnished by Employers Mutual Casualty Company in the amount of five percent (5%) of the bid amount, or $176,700, as evidence of PVGC's good faith in making the bid. See Exhibit "C," Bid Bond Furnished by Employers Mutual Casualty Company. PVGC's bid specifically states that the bid bond "is to become the Property of the Owner in the event the Contract and the bond are not executed within the time set forth, as liquidated damages for the delay and additional work caused thereby." See Exhibit "B."

**8.**

On September 1, 2009, City Park's architect, Carlos Cashio of Cashio Cochran, LLC confirmed with Pete Vicari, President of PVGC, that PVGC would honor its bid. That conversation was further confirmed by an email from Kyle McGehee of Cashio Cochran to Mr. Vicari on the same date. See Exhibit "D," Email correspondence from Kyle McGhee to Pete Vicari. Pursuant to La. R.S. 38:2216, City Park's acceptance of PVGC's bid created an obligation on its part to enter into the contract with City Park, and furnish the statutorily required performance bond.

**9.**

By September 30, 2009, PVGC had failed to enter into the contract as required by law. Thus, on that date, Mr. Cashio again wrote to Mr. Vicari, notifying him again that PVGC's bid had been accepted, and advising that he had ten (10) days to enter into the contract with City Park. See Exhibit "E," Correspondence from Carlos Cashio to Pete Vicari, dated September 30, 2009. Despite this notification, however, PVGC continued to avoid its obligation to enter into the contract in accordance with its bid.

**10.**

On October 19, 2009, Pete Vicari wrote to Carlos Cashio on behalf of his company and advised that PVGC was "declin[ing] to enter into this contract." See Exhibit "F," Correspondence from Pete Vicari to Carlos Cashio, dated October 19, 2009.

**11**.

On October 26, 2009, Mr. Cashio responded to Vicari's October 19 correspondence by advising that City Park expected Vicari to sign the contract documents, and that said documents would again be available for his signature on October 28, 2009. See Exhibit "G," Correspondence from Carlos Cashio to Pete Vicari, dated October 26, 2009. Bob Becker, CEO of City Park, confirmed City Park's expectations by way of correspondence to Mr. Vicari dated October 26, 2009. See Exhibit "H," Correspondence from Bob Becker to Peter Vicari, dated October 26, 2009.

**12.**

PVGC persisted in its refusal to sign the contract documents. Moreover, Mr. Vicari wrote to Mr. Cashio on October 27, 2009, and confirmed that PVGC would not enter into the contract. See Exhibit "I," correspondence from Pete Vicari to Carlos Cashio, dated October 27, 2009. This letter unambiguously reflects PVGC's refusal to enter into the contract as required by law.

**13.**

Because PVGC failed to enter into the contract, City Park was forced to award the Tennis Center contract to the 2nd low bidder, DRC Emergency Services, LLC ("DRC"). On November 9, 2009, DRC and City Park signed the contract documents, with a contract price of $3,680,000. See Exhibit "J," Contract between City Park and DRC Emergency Services, LLC.

**14.**

Accordingly, PVGC's breach of its obligation to enter into the Tennis Center contract has caused City Park monetary damages in the form of increased contract costs. Moreover, PVGC's failure to enter into the contract has caused Plaintiff delay damages. As such, and as acknowledged by PVGC in its bid, City Park is entitled to $176,700 for its failure to enter into the contract as bid.

**15**.

By furnishing the bid bond to PVGC, Employers Mutual became PVGC's surety, as provided by Louisiana Civil Code Article 3035, *et seq*. Because PVGC has breached its obligation to enter into the Tennis Center contract with City Park, City Park is entitled to proceed against Employers Mutual as surety.

**16.**

Pursuant to Louisiana Civil Code Article 3045 and the interpretive comments and jurisprudence, City Park may proceed against the surety, Employers Mutual, without joinder of the principal, PVGC.

**WHEREFORE**, Plaintiff New Orleans City Park Improvement Association, Inc. prays that, after due proceedings be had, there be judgment herein in favor of the New Orleans City Park Improvement Association, Inc., and against Defendant, Employers Mutual Casualty Company**,** as follows:

1) Awarding New Orleans City Park Improvement Association, Inc. the sum of $176,700, plus legal interest;
2) Awarding Plaintiff its reasonable attorney's fees; and
3) All other general and equitable relief warranted by the circumstances.

**RESPECTFULLY SUBMITTED:**

**KINNEY & ELLINGHAUSEN**

**__/s/Michael L. DeShazo_____**
**HENRY W. KINNEY (#7410)**
**MICHAEL L. DESHAZO (#29833)**
**1250 Poydras Street, Suite 2450**
**New Orleans, Louisiana  70113**
**Telephone:     504.524.0206**
**Facsimile:     504.525.6216**
**Attorneys for Plaintiff, New Orleans**
**City Park Improvement Association, Inc.**